Ruffin, C. J.
 

 The Court is of opinion, that the judgment should be affirmed. As the case is stated, it seems to have been the object of the suit to recover the one third of the toll, which, according to the resolution of the company, was demandablc at the middle gate, if the defendant had passed through it; but the claim, in that form, is not sustained by the facts, since the defendant did net. pass through that gate, nor, indeed, enter the road, until he reached Asheville, which is to the east of that gate. As he did not use the road, west of Asheville, it would seem the defendant could not, upon any principle of justice, be chargeable for a toll, between the gate near that place, and the western termination of the road. It was admitted in the argument, that such is the law in respect to a person, who,
 
 bona fide,
 
 came to Asheville, in the ■first instance, on business at that place, for example. But it was contended, that the defendant practised a fraud upon the company, by travelling his way in the immediate vicinity of this road, until he got beyond the middle gate, and then entering the road, because, thereby, he avoided paying two thirds of tbc toll and was enabled to use one half of the road, upon.paying one third of the toll, if he went to the third gate, and without paying any.thing,, if he went off the road before getting to that gate. The Court, however, cannot view the subject in that light,.
 
 *33
 
 By refraining from going on the turnpike, between Tennessee and Asheville, the defendant was guilty of no fraud on the Company, but was only exercising his own legal right. The law compels no one to use the road, but only gives the company the right to a toll from those, who do use it. Every one is free to travel such ways as he may choose and find ; and it is naturally to be supposed, that he will go on those, which are common, unless he find it to his advantage to travel on the turnpike, even at the expense of the tolls. Then, the defendant neither used the road nor was bound
 
 to
 
 use it; he incurred no liability for tolls, at the gate west of Asheville, or between it and Tennessee. If, indeed, the defendant had travelled the road from the Tennessee line to Asheville, going off, when near agate, and re-entering the road on the other side of the gate and out of sight of it, as a trick to avoid paying tolls by not passing through the gate literally, while he had the benefit of the road, the consequence might, perhaps, as it seems manifestly just that it should, be different. But here that point does not arise, as the defendant was not on that part of the road at all, and it could not be the intention of the act, that the citizen should, in any case, be liable for tolls in respect of a section of the road on no part of which he travelled. Up to the middle gate, then, we think that the defendant did nothing, on which a demand for tolls arose to the plaintiff.-
 

 It was, however, contended further, that tolls
 
 pro rata
 
 are due for the distance, which the defendant actually travelled, and that the jury should have been allowed to apportion them. It would seem to be a sufficient answer to that position, that the plaintiff did not ask to have the case thus put to the jury, as the claim was specifically for the tolls demandable at the middle gate, namely, one third of the whole tolls. But, without adverting to that matter, we think that the company cannot apportion the toll, so as to recover, in an action, what they could
 
 *34
 
 not demand on the road on pain of refusing passage to the traveller. For, although it be generally true, that
 
 indebitatus assumpsit
 
 will lie for the value of a benefit derived by one from the labor or property of another, yet the present case is unaffected by that principle. The demand .of the plaintiff is not one of the kind supposed. It is not founded on a
 
 quamtum meruit
 
 or
 
 quantum valebat,
 
 but it is for certain specific tolls, which are demanded, by .virtue of a grant of the franchise to the plaintiff, as .a corporate body. The tolls cannot, on the- one hand, be diminished by shewing, that they are more than a just compensation for the service. So, on the other hand, no higher or other compensation can be claimed, than in the form of the tolls granted and demandable, and payable at the places and in the manner, specified in the grant. The question, therefore, turns upon the terms of the charter, and, from the parts of that instrument, set forth in the ease, it seems clearly to have been the intention of the Legislature, that the company should not be entitled to claim tolls, but at the gates and toll houses erected for that purpose. The grant is that tolls may be demanded at convenient gates, which are tt> be situated at the plea? sure of the company, provided that one shall not be erected within three miles of Asheville, and that one gate is not within ten miles of another: and there is no authority expressed for taking tolls at any poirtt between two gates. Indeed the implication is strong, that tolls cannot be demanded at such intermediate points. The express provisions quoted, that tolls may be exacted at toll gates, anil that the gates shall not be within ten miles of each other, of themselves create that implication. ■ It.would be most inconvenient, that a traveller passing a few miles along the road, who finds -no person on it, to whom he,, may make payment, should be subject- to a . toll for that distance, since, upon the: general rule, he would be obliged to ,seek his creditor, the officer .of the.company, where he
 
 *35
 
 could be found, and make payment or be subject to an action and its costs. The meaning is, that the. tolls should be paid on demand, at certain points on-the road, as they arise, and, in order to give notice of those points, the charter requires that they should be ‘•designated” by “convenient toll gates.” Furthermore, it is to be observed, that the tolls, payable at each gale, are notin proportion to the distance the party may have travelled, or may intend to travel, along the road. Provisions of that kind would give rise to innumerable frauds and controversies. On the contrary, the tolls are to be apportioned according-to the distances, at which the toll gates are from each other. It was only after the road was made for ten milesi that a gate could be erected ; but, after it was erected, one seventh of the whole toll was demandable at that gate, without reference to the-enquiry, whether the person came over all or only one of the ten miles, and the same rule is declared, as to the proportion of tolls for any greater extent of road. Hence the tolls are not only'demandable at the gates, and there only, but they appear to be given.for passing through the, gates respectively; If,-for example, a traveller come to a gate, and'be'refused a passage, because he cannot or- will not pay the toll, there is nothing to prevent his turning back without making any payment; - The charter is'express, that the road is a public higbway.for all persons who pay the tolls imposed, and hence there.can be no
 
 pro ratatoW
 
 demanded, where, there is no gate.- That is further deducible from the-clause,-which forbids the erection ■ of a gate; within threé miles of Asheville, which could have-been inserted, only upon the idea, that no toll was due but at and passing a gate, and was no doubt intended, upon that supposition, to afford the opportunity to all persons, without paying toll, to go on the turnpike far enough to reach the several: common and free roads, which branch Off, east or west from it, within that distance. The inference
 
 *36
 
 is plain, that one, who does nof pass through the gate, but goes out of the road between two gates, is not liable for any toll. Such, too, as we are informed by the counsel on both sides, has been the construction of the charter, which has been acted on by the company throughout its existence ; this being the first instance, in which a claim has ever been set up for a
 
 pro rata
 
 toll for passing from one point to another
 
 on
 
 the road, between which there was no gate. This construction produces but little loss to the company, as they have it in their power, if found to be worth the expense, to increase the number of gates to seven. That number would be sufficient for all the purposes within the purview of the act, as the inhabitants of Buncombe, who alone may be expected frequently to travel short distances on the road, are entirely exempted from tolls, and the Legislature did not mean that other travellers should be harrassed with the delays and vexa< tions at turnpike gates, oftener than every ten miles ; these, however, the gates, are about thirty-five miles apart, and it was consequently the effect of the plaintiff’s own omission, that the defendant was put under no obligation to pay tolls for the portion of road, over which he passed.
 

 Per Curiam'.
 

 Judgment affirmed.